2me553
94  141
2me553
99  524

CASE 52—PETITION ORDINARY—JANUARY 30.

# Maltus vs. Shields.

APPEAL FROM KENTON CIRCUIT COURT.

1. The act incorporating the town of "West Covington," situated on the Ohio river opposite to Cincinnati, and adjoining the city of Covington, its boundaries embracing an area of about of 124 acres, laid off into lots, streets, and alleys, most of the lots improved, with a population of about five hundred: *Held*, to be constitutional and valid.

3. A lot of about nine acres of ground within the town of "West Covington," upon which a residence was erected prior to the act of incorporation, and upon which evergreens and other ornamental trees and shrubs and a large number of fruit trees were planted, a portion of the ground not occupied by buildings and trees being in cultivation, the residence being occupied both prior and subsequent to the act of incorporation: *Held*, to be constitutionally subject to taxation by the municipal authorities of the town.

3. Where the material facts are not controverted, the question whether upon those facts the act incorporating a town, and the assessment of tax under it, are constitutional and valid, is a conclusion of law which may be pronounced at once by the court in its instructions to the jury. The actual condition of the town with respect to territory, population, and locality, constitute the facts which, if controverted, are to be found by the jury; but neither the propriety or necessity of the legislative act, nor the motives which produced it, are among the facts which they are to decide.

4. The principles decided in *Cheaney vs. Hooser*, 9 *B. Mon.*, 330; *City of Covington vs. Southgate*, 15 *B. Mon.*, 491; *Sharp's ex'or vs. Dunavan*, 17 *B. Mon.*, 223, and *Stites vs. Dunavan, referred to and approved.*

CAMBRON & FISK, for appellant, cited 2 *Sess. Acts* 1857–8, *page* 270; 9 *B. Mon.*, 335; 15 *Ib.*, 498; 17 *Ib.*, 230–2; *Civil Code, sec.* 360; *Young vs. Parsons, ante.*

MENZIES & PRYOR, for appellee, cited 9 *B. Mon.*, 330.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

The town of "West Covington" was incorporated by an act of the legislature approved February 16, 1858. (*Sess. Acts*, 2 *vol., p.* 270.) The town is situated on the Ohio river, opposite to Cincinnati, and adjoining the city of Covington. It contains a population of about five hundred, and its boundaries embrace an area of about one hundred and twenty-four acres, laid off into lots, streets, and alleys. Most of the lots, according to the proof, have been improved, and the town is rapidly growing. The local government has been regularly organized by the election of trustees, police judge, marshal, and other officers, according to the provisions of the act of incorporation.

Shields, the appellee, owns a lot within the town containing about nine acres. This lot, it appears, was owned in the year 1840 by Phelps, who built upon it a comfortable residence, and planted evergreens and other ornamental trees and shrubs, and a large number of fruit trees. Shields, it appears, became the owner of this property, and resided upon it prior to the act of incorporation, and still occupies it as a family residence, cultivating a portion of the ground not occupied by the buildings and trees.

Shields refused to pay the tax which had been regularly assessed by the authorities of the town upon his property, and brought this action against Maltus, who had seized certain personal property of the plaintiff as a means of coercing the tax. The defendant justified as collector of the taxes for the town of West Covington, and avers that he took the property in contest for the purpose of coercing from the plaintiff the sum of $20 70, the amount of tax due from him, according to the assessment made by the board of trustees for the year 1858 upon the citizens of the town.

Upon this issue there was a trial and verdict for the plaintiff. The court refused to set aside the verdict, but rendered a judgment in conformity with it, and the defendant has appealed.

Whether the property of Shields within the limits of West Covington was, or could be, constitutionally subjected to taxation by the municipal authorities of the town, under the act of incorporation, is the only question to be considered.

The constitutional power of the legislature to pass this act of incorporation has not been questioned. No attempt has been made to show that the common convenience and welfare of all the people occupying the territory embraced by its boundaries did not require the protection afforded by the local government for which the act provides. Nor has any attempt been made to show that there was any abuse of the legislative power or discretion in so fixing the boundaries of the town as to bring into it either persons or property that were not in a condition to participate in the benefits of the local government, and that should not, for that reason, be compelled to contribute to the local burthens. No inequality or hardship on this score is complained of; but the appellee's right of exemption from taxation is claimed upon an entirely different ground.

He asked the court below to instruct the jury, in substance, that if they believed from the evidence that the appellee was using this property, at the time the tax was assessed, *as a farm*, and that he had not since devoted it to town purposes, they must find for him. The court gave this instruction, which, no doubt, superinduced the verdict complained of.

The counsel for the appellee now insists that the instruction was proper; that as the appellee had been appropriating a portion of this nine acres of ground to the cultivation of fruits, vegetables, and other products, it was, properly speaking, a *farm;* and that as it had not been *" devoted to town purposes,"* in the language of the instruction, the legislature had no power to subject the land to a town tax against the wishes of the owner. And in support of this view, the case of *Cheaney vs. Hooser* (9 *B. Mon.*, 330) is cited.

In that case, however, no authority for the principle contended for is to be found. On the contrary, it is expressly

decided that when a town has been built and peopled, the legislature has the power to grant an act of incorporation without the assent of its citizens; that this power of providing a local government includes necessarily the power of ascertaining and prescribing the extent of the town, and the proper boundaries of its territorial jurisdiction; that the power and discretion of the legislature upon this subject are only limited by the discrimination to be made between what may, with reasonable plausibility, be called a tax for which the objects of the taxation may be regarded as a just compensation, and that which is palpably not a tax, but is, under the form of a tax, or in some other form, the taking of private property for the use of the public without compensation; that exact equality in distributing the burthen of local taxation is not attainable, and cannot form the test of the distinction referred to, but that there must be a palpable departure from equality, or it must be palpable that persons or their property are subjected to a local burthen for the benefit of others, or for purposes in which they have no interest, and to which they are, therefore, not justly bound to contribute.

. And it was upon this principle, held in the subsequent case of the *City of Covington vs. Southgate*, (15 *B. Mon.*, 491,) that the act extending the limits of Covington, so as to include 167 acres of land belonging to Southgate, was invalid. It was shown that the land was appropriated to fields, pasture-land, and wood-land; that there were but few houses and many vacant lots in that part of the city adjoining and near the land, and that it was not necessary for any of the purposes of the city, and should not have been brought within its limits. It was, therefore, properly regarded as coming within the example stated in the case of *Cheaney vs. Hooser*, and as a clear case of the taking of private property for public use without compensation.

But in the still later case of *Sharp's executor vs. Dunavan*, (17 *B. Mon.*, 223,) it appeared that thirty-four acres of the land owned by Sharp had been brought within the town of Hopkinsville, by an extension of the town limits; that Sharp and his family were the only persons residing upon the land, and that it was

used exclusively for agricultural purposes. It was insisted that these facts brought the case within the principle decided in the case of the *City of Covington vs. Southgate, supra*. But it was held that the act extending the boundaries of the town was constitutional, and that the land in question was subject to taxation; that there was such an extension of the town in certain quarters as justified the legislature in extending the boundary, and that whether the boundary was just where it ought to be, or where necessity required it to be, was not the subject of judicial inquiry or scrutiny; that the persons brought into the town had nearly all the advantages which actual citizens derived from its business, its improvements, its institutions, and its good government, and it was, therefore, no such flagrant case as authorized the conclusion, at first blush, that the taxation imposed was the mere taking of private property for public use without compensation.

The case of *Stites vs. Dunavan* arose under the same act, extending the boundaries of Hopkinsville, and it was decided that the tract of land owned by the appellant, containing twenty-two acres, used as a residence and for pasturing and other agricultural purposes, was liable to taxation.

These authorities establish beyond all doubt the constitutional validity of the act incorporating the town of West Covington, and the consequent liability of all the property embraced within its limits to contribute equally to its revenues. Whether the land owned by the appellee is used for one purpose or another, is wholly immaterial. The law has fixed a more certain and less fluctuating test for determining so important a right as that of local or municipal taxation. If it were not so, there might be reason to apprehend that town or city lots would become very generally and speedily converted into *farms*, by devoting a portion, however small, to agricultural purposes. For it is supposed that the principle contended for would not be affected by the size of the lot, or by the quantity of land which might be so cultivated.

None of the material facts of this case were controverted, and the question whether, upon those facts, the act of incorporation and the assessment of tax under it are constitutional

and valid, is a conclusion of law which may be pronounced at once by the court in instructions to the jury. This was decided in *Sharp's ex'or vs. Dunavan, supra,* in which it is said that neither the propriety or necessity of the legislative act, nor the motives which produced it, are among the facts which the jury is to decide. If the rule were otherwise, it would make the constitutionality of the law to depend on the opinion of the jury as to matters upon which the legislature has, in passing the act, expressed its judgment. And that judgment can be successfully assailed only on the ground of a palpable violation of constitutional right, as has been already shown. The actual condition of the town with respect to territory, population, and locality, constitute the facts which, if controverted are to be found by the jury.

Upon the facts, then, as presented by this record, the court below should have given the peremptory instruction asked by the appellant, to find for him.

The judgment is therefore reversed, and the cause remanded for a new trial and further proceedings in conformity with the principles of this opinion.